# EXHIBIT

# O

# LETTER FROM WFHM DATED 11/27/2012

WELLS FARGO | HOME MORTGAGE

Wells Fargo Home Mortgage
P.O. Box 10368
Des Moines, IA 50306-0368

November 27, 2012

Timothy J Dietz
2503 34th Avenue
Longview, WA 98632

Dear Timothy J Dietz:

RE:   Loan Number 708-0210180881

Wells Fargo Home Mortgage (WFHM) received an inquiry regarding the above referenced mortgage loan. Therefore, I will be addressing your concerns.

WFHM will not discuss loan information with any party that has not been authorized by you.

Our records indicate the loan referenced above was originated on September 25, 2008. Please refer to the loan documents that you executed and received copies of during the closing of this loan. We have enclosed copies of your Note and Deed of Trust for your reference. These documents validate the above mentioned loan.

Our records indicate that Wells Fargo is the investor and the servicer on the loan. All inquiries and concerns about the loan should be addressed with us.

Enclosed you will find the following documents. A description of each document is included for your reference.

Payment History/Customer Account Activity Statement

The Customer Account Activity Statement (CAAS) reflects a complete payment history for the period of December 04, 2009 through the date of this letter. The CAAS reflects when payments were received, how they were applied to the loan, and any distributions made from the loan. The CAAS provides a description for each transaction and running balances of the unpaid principal, escrow, unapplied and outstanding fee accounts. It also includes the date fees and charges were assessed, any amounts paid toward these fees, and waivers/reversal of these fees is also reflected. Late Fees are reported on the annual mortgage statement. The Unapplied Balance column references the funds that may have been applied to the unapplied account. Payments can be applied to the unapplied account if the funds received do not represent the full monthly mortgage payment due, or if WFHM Mortgage is not informed of where the payment is to be applied.

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have received a discharge of this debt in bankruptcy or are currently in a bankruptcy case, this notice is not intended as an attempt to collect a debt as this company has a security interest in the property and will only exercise its rights against the property.

With respect to those loans located in the State of California, the state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

WC403/42g/gel

Together we'll go far

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. NMLSR ID 399801

**WELLS FARGO | HOME MORTGAGE**

Wells Fargo Home Mortgage
P.O. Box 10368
Des Moines, IA 50306-0368

Dietz
November 27, 2012
Page 2

### Note and Security Instrument

Validate the above mentioned loan. The Note and Security Instrument include, but are not limited to, information concerning our right to assess fees and costs to the loan, inspect the property, and purchase lender placed insurance on the customer's behalf.

### HUD1 - Settlement Sheet

Itemization of all charges imposed for the real estate transaction, including incoming and outgoing funds. Items indicating POC (Paid Outside of Closing) are fees associated with the transaction but paid prior to closing.

### Final Loan Application

Used to record relevant financial information about a mortgage applicant.

### Truth in Lending (TIL)

Contains the final amount financed, annual percentage rate, finance charge, total of payments, payment schedule, and whether the loan includes a demand feature, prepayment penalty, assumption feature, variable rate feature, late charge feature, and security for the loan.

### Good Faith Estimate (GFE)

Provides an estimate of the settlement charges and loan terms if the loan is approved.

Please be advised that WFHM does not disburse original documents. However, WFHM does have a valid loan and lien on this property.

Any documents or requested information not provided in this letter is due to the request being too broad to determine specific information needed, or are considered to be proprietary information of WFHM and will not be provided at this time without a subpoena. Additional information is available by calling our Subpoena Line at 1-877-883-6254.

For all payoff inquiries or to obtain a payoff quote, please contact the foreclosure attorney, Quality Loan Service at 1-619-645-7711.

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have received a discharge of this debt in bankruptcy or are currently in a bankruptcy case, this notice is not intended as an attempt to collect a debt as this company has a security interest in the property and will only exercise its rights against the property.

With respect to those loans located in the State of California, the state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

Together we'll go far

WC403/42g/ge1

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. NMLSR ID 399801

WELLS FARGO | HOME MORTGAGE

Wells Fargo Home Mortgage
P.O. Box 10368
Des Moines, IA 50306-0368

Dietz
November 27, 2012
Page 3

If you have any questions about or would like to discuss loan workout arrangements, please contact our Collections Department at 1-800-678-7986. Representatives are available to assist you Monday through Thursday 7:00 a.m. to 9:00 p.m., Friday 7:00 a.m. to 8:00 p.m., and Saturday 8:00 a.m. to 2:00 p.m. Central Time.

If you have any additional questions, please contact our Customer Service Department at 1-866-234-8271. Representatives are available for assistance Monday through Friday, 6:00 a.m. to 10:00 p.m., and Saturday, 8:00 a.m. to 2:00 p.m., Central Time.

Sincerely,

*Kari Calhoun*
Kari Calhoun
Written Customer Contact

Enclosures

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have received a discharge of this debt in bankruptcy or are currently in a bankruptcy case, this notice is not intended as an attempt to collect a debt as this company has a security interest in the property and will only exercise its rights against the property.

With respect to those loans located in the State of California, the state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

WC403/42g/ge1

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. NMLSR ID 399801

Together we'll go far

Customer Account Activity Statement
Loan # 708 - 0210180881
DIETZ

v1.01

| Date Received | Effective Date | Due Date | Amount Received | Amount Applied to Principal | Amount Applied to Interest | Escrow Applied / Disbursed | Unapplied Funds | Fees Assessed or Recovered | Corporate Advance Fees Assessed or Recovered | Principal Balance | Escrow Balance | Unapplied Balance | Outstanding Fee Balance | Outstanding Corporate Advance Fee Balance | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | $198,144.60 | $347.90 | $0.00 | $0.00 | $0.00 | Beginning Totals/Balances |
| 12/04/09 | | | | | | -$77.85 | | | | $198,144.60 | $270.05 | $0.00 | $0.00 | $0.00 | Mortgage Insurance Disbursement |
| 12/16/09 | | | | | | | | -$55.01 | | $198,144.60 | $270.05 | $0.00 | $55.01 | $0.00 | Late Charge Assessed |
| 12/17/09 | | | | | | -$613.00 | | | | $198,144.60 | -$342.95 | $0.00 | $55.01 | $0.00 | Homeowners Insurance Paid |
| 12/30/09 | 12/30/09 | Dec-09 | $1,375.13 | $223.28 | $887.52 | $264.33 | | | | $197,921.32 | -$78.62 | $0.00 | $55.01 | $0.00 | Monthly Mortgage Payment (MMP) |
| 01/05/10 | | | | | | -$77.85 | | | | $197,921.32 | -$156.47 | $0.00 | $55.01 | $0.00 | Mortgage Insurance Disbursement |
| 01/19/10 | | | | | | | | -$55.01 | | $197,921.32 | -$156.47 | $0.00 | $110.02 | $0.00 | Late Charge Assessed |
| 01/29/10 | 01/30/10 | Jan-10 | $1,375.13 | $224.28 | $886.52 | $264.33 | | | | $197,697.04 | $107.86 | $0.00 | $110.02 | $0.00 | Monthly Mortgage Payment (MMP) |
| 02/04/10 | | | | | | -$77.85 | | | | $197,697.04 | $30.01 | $0.00 | $110.02 | $0.00 | Mortgage Insurance Disbursement |
| 02/16/10 | | | | | | | | -$55.01 | | $197,697.04 | $30.01 | $0.00 | $165.03 | $0.00 | Late Charge Assessed |
| 03/04/10 | | | | | | -$77.85 | | | | $197,697.04 | -$47.84 | $0.00 | $165.03 | $0.00 | Mortgage Insurance Disbursement |
| 03/16/10 | | | | | | | | -$55.01 | | $197,697.04 | -$47.84 | $0.00 | $220.04 | $0.00 | Late Charge Assessed |
| 04/02/10 | | | | | | -$77.85 | | | | $197,697.04 | -$125.69 | $0.00 | $220.04 | $0.00 | Mortgage Insurance Disbursement |
| 04/12/10 | | | | | | -$776.79 | | | | $197,697.04 | -$902.48 | $0.00 | $220.04 | $0.00 | County Taxes Paid |
| 04/16/10 | | | | | | | | -$55.01 | | $197,697.04 | -$902.48 | $0.00 | $275.05 | $0.00 | Late Charge Assessed |
| 05/04/10 | | | | | | -$77.85 | | | | $197,697.04 | -$980.33 | $0.00 | $275.05 | $0.00 | Mortgage Insurance Disbursement |
| 05/21/10 | 05/21/10 | | $900.00 | | | | $900.00 | | | $197,697.04 | -$980.33 | $900.00 | $275.05 | $0.00 | Unapplied Funds |
| 06/04/10 | | | | | | -$77.85 | | | | $197,697.04 | -$1,058.18 | $900.00 | $275.05 | $0.00 | Mortgage Insurance Disbursement |
| 06/14/10 | 06/12/10 | Feb-10 | $1,420.91 | $226.28 | $885.52 | $264.33 | $1,420.91 | | | $197,471.76 | -$793.85 | $2,320.91 | $275.05 | $0.00 | Unapplied Funds |
| 06/15/10 | 06/12/10 | | | | | | -$1,375.13 | | | $197,471.76 | -$793.85 | $945.78 | $275.05 | $0.00 | Unapplied Funds to MMP |
| 07/02/10 | | | | | | -$77.85 | | | | $197,471.76 | -$871.70 | $945.78 | $275.05 | $0.00 | Mortgage Insurance Disbursement |
| 07/09/10 | 07/09/10 | | $1,420.91 | | | | $1,420.91 | | | $197,471.76 | -$871.70 | $2,366.69 | $275.05 | $0.00 | Unapplied Funds |
| 07/12/10 | 07/09/10 | Mar-10 | | $226.29 | $884.51 | $264.33 | -$1,375.13 | | | $197,245.47 | -$607.37 | $991.56 | $275.05 | $0.00 | Unapplied Funds to MMP |
| 08/04/10 | | | | | | -$77.85 | | | | $197,245.47 | -$685.22 | $991.56 | $275.05 | $0.00 | Mortgage Insurance Disbursement |
| 08/22/10 | 08/22/10 | | $1,420.91 | | | | $1,420.91 | | | $197,245.47 | -$685.22 | $2,412.47 | $275.05 | $0.00 | Unapplied Funds |
| 08/23/10 | 08/22/10 | Apr-10 | | $227.30 | $883.50 | $264.33 | -$1,376.13 | | | $197,018.17 | -$420.89 | $1,037.34 | $275.05 | $0.00 | Unapplied Funds to MMP |
| 09/03/10 | | | | | | -$77.85 | | | | $197,018.17 | -$498.74 | $1,037.34 | $275.05 | $0.00 | Mortgage Insurance Disbursement |
| 08/10/10 | | | | | | | -$275.05 | $275.05 | | $197,018.17 | -$498.74 | $762.29 | $0.00 | $0.00 | Unapplied Funds to Late Charges |
| 09/15/10 | | Nov-10 | | -$5,805.18 | | | -$762.29 | | | $202,823.35 | $773.85 | $762.29 | $0.00 | $0.00 | Reversal |
| 09/15/10 | | Nov-10 | | | $5,204.88 | $1,272.59 | | | | $202,823.35 | $696.00 | $0.00 | $0.00 | $0.00 | Mortgage Insurance Disbursement |
| 10/04/10 | | | | | | -$477.85 | | | | $202,823.35 | -$80.79 | $0.00 | $0.00 | $0.00 | County Taxes Paid |
| 10/04/10 | | | | | | -$776.79 | | | | $202,823.35 | -$857.67 | $0.00 | $0.00 | $0.00 | Mortgage Insurance Disbursement |
| 11/04/10 | | | | | | -$76.88 | | | | $202,823.35 | -$108.63 | $0.00 | $0.00 | $0.00 | Late Charge Assessed |
| 11/16/10 | | | | | | | | -$51.16 | | $202,550.14 | $31.75 | $0.00 | $51.16 | $0.00 | MMP & Late Charges Paid |
| 11/30/10 | 11/30/10 | Nov-10 | $1,330.13 | $273.21 | $739.46 | $266.30 | | $51.16 | | $202,550.14 | $31.75 | $0.00 | $0.00 | $0.00 | Mortgage Insurance Disbursement |
| 12/03/10 | | | | | | -$76.88 | | | | $202,550.14 | $31.75 | $0.00 | $51.16 | $0.00 | Late Charge Assessed |
| 12/16/10 | | | | | | | | -$51.16 | | $202,550.14 | -$501.25 | $0.00 | $51.16 | $0.00 | Homeowners Insurance Paid |
| 12/23/10 | | | | | | -$533.00 | | | | $202,550.14 | -$578.13 | $0.00 | $51.16 | $0.00 | Mortgage Insurance Disbursement |
| 01/04/11 | | | | | | -$76.88 | | | | $202,550.14 | -$678.13 | $0.00 | $102.32 | $0.00 | Late Charge Assessed |
| 01/18/11 | | | | | | | | -$51.16 | | $202,550.14 | -$678.13 | $0.00 | $102.32 | $0.00 | |

Customer Account Activity Statement
Loan # 708 - 0210180881
DIETZ

v1.04

| Date Received | Effective Date | Due Date | Amount Received | Amount Applied to Principal | Amount Applied to Interest | Escrow Applied / Disbursed | Unapplied Funds | Fees Assessed or Recovered | Corporate Advance Fees Assessed or Recovered | Principal Balance | Escrow Balance | Unapplied Balance | Outstanding Fee Balance | Outstanding Corporate Advance Fee Balance | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02/04/11 | | | | | | -$76.68 | | | | $202,550.14 | -$655.01 | $0.00 | $102.32 | $0.00 | Mortgage Insurance Disbursement |
| 02/16/11 | | | | | | | | -$51.16 | | $202,550.14 | -$655.01 | $0.00 | $153.48 | $0.00 | Late Charge Assessed |
| 03/01/11 | | | | | | | | -$20.00 | | $202,550.14 | -$655.01 | $0.00 | $173.48 | $0.00 | Property Inspection Fee Assessed |
| 03/04/11 | | | | | | -$76.88 | | | | $202,550.14 | -$731.89 | $0.00 | $173.48 | $0.00 | Mortgage Insurance Disbursement |
| 03/16/11 | | | | | | | | -$51.16 | | $202,550.14 | -$731.89 | $0.00 | $224.64 | $0.00 | Late Charge Assessed |
| 04/04/11 | | | | | | -$76.88 | | | | $202,550.14 | -$808.77 | $0.00 | $224.64 | $0.00 | Mortgage Insurance Disbursement |
| 04/12/11 | | | | | | -$768.26 | | | | $202,550.14 | -$1,577.03 | $0.00 | $224.64 | $0.00 | County Taxes Paid |
| 04/18/11 | | | | | | | | -$51.16 | | $202,550.14 | -$1,577.03 | $0.00 | $275.80 | $0.00 | Late Charge Assessed |
| 04/29/11 | | | | | | | | | -$20.00 | $202,550.14 | -$1,577.03 | $0.00 | $275.80 | $20.00 | Property Inspection Fee Assessed |
| 05/04/11 | | | | | | -$76.88 | | | | $202,550.14 | -$1,653.91 | $0.00 | $275.80 | $20.00 | Mortgage Insurance Disbursement |
| 05/16/11 | | | | | | | | -$51.16 | | $202,550.14 | -$1,653.91 | $0.00 | $326.96 | $20.00 | Late Charge Assessed |
| 05/27/11 | | | | | | | | | -$20.00 | $202,550.14 | -$1,653.91 | $0.00 | $326.96 | $40.00 | Property Inspection Fee Assessed |
| 06/03/11 | | | | | | -$76.88 | | | | $202,550.14 | -$1,730.79 | $0.00 | $326.96 | $40.00 | Mortgage Insurance Disbursement |
| 06/16/11 | | | | | | | | -$51.16 | | $202,550.14 | -$1,730.79 | $0.00 | $378.12 | $40.00 | Late Charge Assessed |
| 06/29/11 | | | | | | | | | -$20.00 | $202,550.14 | -$1,730.79 | $0.00 | $378.12 | $60.00 | Property Inspection Fee Assessed |
| 07/04/11 | | | | | | -$76.88 | | | | $202,550.14 | -$1,807.67 | $0.00 | $378.12 | $60.00 | Mortgage Insurance Disbursement |
| 07/18/11 | | | | | | | | -$51.16 | | $202,550.14 | -$1,807.67 | $0.00 | $429.28 | $60.00 | Late Charge Assessed |
| 07/29/11 | | | | | | | | | -$20.00 | $202,550.14 | -$1,807.67 | $0.00 | $429.28 | $80.00 | Property Inspection Fee Assessed |
| 08/04/11 | | | | | | -$76.88 | | | | $202,550.14 | -$1,884.55 | $0.00 | $429.28 | $80.00 | Mortgage Insurance Disbursement |
| 08/16/11 | | | | | | | | -$51.16 | | $202,550.14 | -$1,884.55 | $0.00 | $480.44 | $80.00 | Late Charge Assessed |
| 08/30/11 | | | | | | | | | -$20.00 | $202,550.14 | -$1,884.55 | $0.00 | $480.44 | $100.00 | Property Inspection Fee Assessed |
| 09/02/11 | | | | | | -$76.88 | | | | $202,550.14 | -$1,961.43 | $0.00 | $480.44 | $100.00 | Mortgage Insurance Disbursement |
| 09/16/11 | | | | | | | | -$51.16 | | $202,550.14 | -$1,961.43 | $0.00 | $531.60 | $100.00 | Late Charge Assessed |
| 09/28/11 | | | | | | | | | -$20.00 | $202,550.14 | -$1,961.43 | $0.00 | $531.60 | $120.00 | Property Inspection Fee Assessed |
| 10/03/11 | | | | | | -$76.88 | | | | $202,550.14 | -$2,038.31 | $0.00 | $531.60 | $120.00 | Mortgage Insurance Disbursement |
| 10/10/11 | | | | | | -$768.26 | | | | $202,550.14 | -$2,806.57 | $0.00 | $531.60 | $120.00 | County Taxes Paid |
| 10/17/11 | | | | | | | | -$51.16 | | $202,550.14 | -$2,806.57 | $0.00 | $582.76 | $120.00 | Late Charge Assessed |
| 10/31/11 | | | | | | | | | -$20.00 | $202,550.14 | -$2,806.57 | $0.00 | $582.76 | $140.00 | Property Inspection Fee Assessed |
| 11/04/11 | | | | | | -$75.84 | | | | $202,550.14 | -$2,882.41 | $0.00 | $582.76 | $140.00 | Mortgage Insurance Disbursement |
| 11/16/11 | | | | | | | | -$51.16 | | $202,550.14 | -$2,882.41 | $0.00 | $633.92 | $140.00 | Late Charge Assessed |
| 11/28/11 | | | | | | | | -$20.00 | | $202,550.14 | -$2,882.41 | $0.00 | $653.92 | $140.00 | Property Inspection Fee Assessed |
| 12/02/11 | | | | | | -$75.84 | | | | $202,550.14 | -$2,958.25 | $0.00 | $653.92 | $140.00 | Mortgage Insurance Disbursement |
| 12/16/11 | | | | | | | | -$51.16 | | $202,550.14 | -$2,958.25 | $0.00 | $705.08 | $140.00 | Late Charge Assessed |
| 01/03/12 | | | | | | | | | -$20.00 | $202,550.14 | -$2,958.25 | $0.00 | $705.08 | $160.00 | Property Inspection Fee Assessed |
| 01/04/12 | | | | | | -$75.84 | | | | $202,550.14 | -$3,034.09 | $0.00 | $705.08 | $160.00 | Mortgage Insurance Disbursement |
| 01/17/12 | | | | | | | | -$50.48 | | $202,550.14 | -$3,034.09 | $0.00 | $755.56 | $160.00 | Late Charge Assessed |
| 01/26/12 | | | | | | | | | -$20.00 | $202,550.14 | -$3,034.09 | $0.00 | $755.56 | $180.00 | Property Inspection Fee Assessed |
| 02/03/12 | | | | | | -$75.84 | | | | $202,550.14 | -$3,109.93 | $0.00 | $755.56 | $180.00 | Mortgage Insurance Disbursement |
| 02/16/12 | | | | | | | | -$50.48 | | $202,550.14 | -$3,109.93 | $0.00 | $806.04 | $180.00 | Late Charge Assessed |
| 03/01/12 | | | | | | | | | -$15.00 | $202,550.14 | -$3,109.93 | $0.00 | $806.04 | $195.00 | Property Inspection Fee Assessed |

Customer Account Activity Statement
Loan # 708 - 0210180881
DIETZ

v1.04

| Date Received | Effective Date | Due Date | Amount Received | Amount Applied to Principal | Amount Applied to Interest | Escrow Applied / Disbursed | Unapplied Funds | Fees Assessed or Recovered | Corporate Advance Fees Assessed or Recovered | Principal Balance | Escrow Balance | Unapplied Balance | Outstanding Fee Balance | Outstanding Corporate Advance Fee Balance | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/02/12 | | | | | | -$75.84 | | | | | | | | | |
| 03/16/12 | | | | | | | | -$50.48 | | $202,550.14 | -$3,165.77 | $0.00 | $806.04 | $195.00 | Mortgage Insurance Disbursement |
| 04/02/12 | | | | | | | | | -$15.00 | $202,550.14 | -$3,165.77 | $0.00 | $856.52 | $195.00 | Late Charge Assessed |
| 04/04/12 | | | | | | -$75.84 | | | | $202,550.14 | -$3,165.77 | $0.00 | $856.52 | $210.00 | Property Inspection Fee Assessed |
| 04/12/12 | | | | | | -$789.57 | | | | $202,550.14 | -$3,261.61 | $0.00 | $856.52 | $210.00 | Mortgage Insurance Disbursement |
| 04/16/12 | | | | | | | | -$50.48 | | $202,550.14 | -$4,051.18 | $0.00 | $856.52 | $210.00 | County Taxes Paid |
| 05/01/12 | | | | | | | | | -$15.00 | $202,550.14 | -$4,051.18 | $0.00 | $907.00 | $210.00 | Late Charge Assessed |
| 05/04/12 | | | | | | -$75.84 | | | | $202,550.14 | -$4,127.02 | $0.00 | $907.00 | $225.00 | Property Inspection Fee Assessed |
| 06/03/12 | | | | | | -$75.84 | | | | $202,550.14 | -$4,202.86 | $0.00 | $907.00 | $225.00 | Mortgage Insurance Disbursement |
| 06/18/12 | | | | | | | | -$50.48 | | $202,550.14 | -$4,202.86 | $0.00 | $957.48 | $225.00 | Mortgage Insurance Disbursement |
| 07/04/12 | | | | | | -$75.84 | | | | $202,550.14 | -$4,278.70 | $0.00 | $957.48 | $225.00 | Late Charge Assessed |
| 07/16/12 | | | | | | | | -$50.48 | | $202,550.14 | -$4,278.70 | $0.00 | $1,007.96 | $225.00 | Mortgage Insurance Disbursement |
| 07/26/12 | | | | | | | | | -$15.00 | $202,550.14 | -$4,278.70 | $0.00 | $1,007.96 | $240.00 | Late Charge Assessed |
| 08/03/12 | | | | | | -$75.84 | | | | $202,550.14 | -$4,354.54 | $0.00 | $1,007.96 | $240.00 | Property Inspection Fee Assessed |
| 08/16/12 | | | | | | | | -$50.48 | | $202,550.14 | -$4,354.54 | $0.00 | $1,058.44 | $240.00 | Mortgage Insurance Disbursement |
| 09/03/12 | | | | | | -$75.84 | | | | $202,550.14 | -$4,430.38 | $0.00 | $1,058.44 | $240.00 | Late Charge Assessed |
| 10/04/12 | | | | | | -$75.84 | | | | $202,550.14 | -$4,506.22 | $0.00 | $1,058.44 | $240.00 | Mortgage Insurance Disbursement |
| 10/05/12 | | | | | | | | | -$15.00 | $202,550.14 | -$4,506.22 | $0.00 | $1,058.44 | $255.00 | Mortgage Insurance Disbursement |
| 10/09/12 | | | | | | -$789.57 | | | | $202,550.14 | -$5,295.79 | $0.00 | $1,058.44 | $255.00 | Property Inspection Fee Assessed |
| 11/02/12 | | | | | | -$74.74 | | | | $202,550.14 | -$5,370.53 | $0.00 | $1,058.44 | $255.00 | County Taxes Paid |
| 11/16/12 | | | | | | | | | -$15.00 | $202,550.14 | -$5,370.53 | $0.00 | $1,058.44 | $270.00 | Mortgage Insurance Disbursement |
| | | | | | | | | | | | | | | | Property Inspection Fee Assessed |



MIN: 1003072-0000042841-1          **NOTE**          Loan Number: 4047861

FHA Case No.
561-8751648-703

SEPTEMBER 25, 2008         LAKE OSWEGO                                OREGON
[Date]                     [City]                                    [State]

2503 34TH AVENUE, LONGVIEW, WASHINGTON 98632
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns.
"Lender" means HYPERION CAPITAL GROUP, LLC, A LIMITED LIABILITY COMPANY
and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of ONE HUNDRED NINETY-TWO THOUSAND THREE HUNDRED SEVENTY-FIVE AND 00/100
Dollars (U.S. $ 192,375.00 ),
plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of SIX AND 500/1000                                        percent
( 6.500 %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

(A) Time
Borrower shall make a payment of principal and interest to Lender on the 1st day of each month beginning on NOVEMBER 1, 2008             . Any principal and interest remaining on the 1st   day of
OCTOBER, 2038          , will be due on that date, which is called the "Maturity Date."
(B) Place
Payment shall be made at 5885 SW MEADOWS ROAD, SUITE 850, LAKE OSWEGO, OREGON 97035

                                                                   , or at such other place
as Lender may designate in writing by notice to Borrower.
(C) Amount
Each monthly payment of principal and interest will be in the amount of U.S. $ 1,215.94 .
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.
(D) Allonge to this Note for Payment Adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.

WASHINGTON - FHA FIXED RATE NOTE
WAFHA.NTE 05/01/08                         Page 1 of 3                    DocMagic eForms 800-649-1362
                                                                              www.docmagic.com

(Check applicable box.)

☐ Growing Equity Allonge
☐ Graduated Payment Allonge
☐ Other [specify]:

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR AND 000/1000          percent (   4.000  %) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

WASHINGTON - FHA FIXED RATE NOTE
WAFHA.NTE 05/01/08                    Page 2 of 3                    DocMagic eForms 800-649-1362
                                                                      www.docmagic.com

ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FOREBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Note.

_____ (Seal)  
TIMOTHY J. DIETZ        -Borrower

_____ (Seal)  
                        -Borrower

_____ (Seal)  
                        -Borrower

_____ (Seal)  
                        -Borrower

_____ (Seal)  
                        -Borrower

_____ (Seal)  
                        -Borrower

Pay to the order of:

WITHOUT RECOURSE  
Hyperion Capital Group, LLC

_Doris Wilcoxen_  
Name: Doris Wilcoxen  
Title: Assistant Vice President

*[Sign Original Only]*

WASHINGTON - FHA FIXED RATE NOTE  
WAFHA.NTE 05/01/08                Page 3 of 3                DocMagic eForms 800-649-1362  
                                                             www.docmagic.com

WF 210180831

COPY

After Recording Return To:
HYPERION CAPITAL GROUP, LLC
5885 SW MEADOWS ROAD, SUITE 850
LAKE OSWEGO, OREGON 97035

3376077
10/03/2008 02:55:40 PM      Pages: 12
Deed Of Trust   COWLITZ COUNTY TITLE COMPANY  54.00
Cowlitz County Washington

158545 MH

[Space Above This Line For Recording Data]

## DEED OF TRUST

FHA CASE NO.

Loan Number: 4047861
MIN: 1003072-0000042841-1

561-8751648-703

Grantor(s) (Last name first, then first name and initials):
1. DIETZ, TIMOTHY J.
2.
3.
4.
5.
6.
☐ Additional names on page ___ of document.

Grantee(s) (Last name first, then first name and initials):
1. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (MERS)
2. COWLITZ COUNTY TITLE COMPANY
3.
4.
5.
6.
☐ Additional names on page ___ of document.

Legal Description (abbreviated: i.e., lot, block, plat or section, township, range):
LONGVIEW HOMESTEADS LOT 20 LOT 1 OF BLK 14

Full legal description on page  2  of document.
Assessor's Property Tax Parcel(s) or Account Number(s): 0-5311
Reference Number(s) Assigned or Released:
☐ Additional references on page ___ of document.

FHA WASHINGTON DEED OF TRUST - MERS
6/96                                Page 1 of 11           DocMagic eForms 800-649-1362
                                                           www.docmagic.com

12/54

THIS DEED OF TRUST ("Security Instrument") is made on SEPTEMBER 25, 2008
The grantor is TIMOTHY J. DIETZ, A MARRIED MAN

("Borrower").

The trustee is COWLITZ COUNTY TITLE COMPANY

("Trustee").

The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
HYPERION CAPITAL GROUP, LLC, A LIMITED LIABILITY COMPANY

("Lender")

is organized and existing under the laws of OREGON
and has an address of 5885 SW MEADOWS ROAD, SUITE 850, LAKE OSWEGO, OREGON 97035

Borrower owes Lender the principal sum of ONE HUNDRED NINETY-TWO THOUSAND THREE HUNDRED SEVENTY-FIVE AND 00/100       Dollars (U.S. $ 192,375.00   ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on OCTOBER 1, 2038         . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in                    COWLITZ
County, Washington:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.
A.P.N.: 0-5311

which has the address of 2503 34TH AVENUE
                                                    [Street]
LONGVIEW                     , Washington    98632   ("Property Address"):
        [City]                                                      [Zip Code]

FHA WASHINGTON DEED OF TRUST - MERS
6/96                                   Page 2 of 11                    DocMagic *eForms* 800-649-1362
                                                                                       www.docmagic.com

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund

any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless the Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate

information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

   (a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

      (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

FHA WASHINGTON DEED OF TRUST - MERS
6/96                                    Page 5 of 11                    DocMagic eForms 800-649-1362
                                                                        www.docmagic.com

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j - 3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 DAYS from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 DAYS from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums

secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as applicable law may require. After the time required by applicable law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by applicable law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county clerk of the superior court of the county in which the sale took place.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the

Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

**19. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under applicable law.

**20. Substitute Trustee.** In accordance with applicable law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Use of Property.** The Property is not used principally for agricultural or farming purposes.

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)].

- ☐ Condominium Rider
- ☐ Planned Unit Development Rider
- ☐ Non-Owner Occupancy Rider
- ☐ Graduated Payment Rider
- ☐ Adjustable Rate Rider
- ☐ Other [Specify]
- ☐ Growing Equity Rider
- ☐ Rehabilitation Loan Rider